In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-2817

FREDRICK LEE WALKER,

*Plaintiff-Appellant,*

*v.*

MICHAEL F. SHEAHAN, Sheriff, WILLIAM KAMPIC,
VINCENT E. GARRETT, et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5634—**Samuel Der-Yeghiayan,** *Judge.*

———————

ARGUED MARCH 31, 2008—DECIDED MAY 14, 2008

———————

Before KANNE, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* Fredrick Lee Walker, a pretrial
detainee who has been incarcerated at the Cook County
Jail (CCJ) for almost 8 years, alleges that the defendant
correctional officers attacked and used excessive force
against him, deprived him of access to medical care, and
retaliated against him for exercising his constitutional
rights. He also brings claims pursuant to *Monell v. De-
partment of Social Services of New York City*, 436 U.S. 658
(1978), alleging a widespread practice of using excessive
force of which defendants Cook County and then-Sheriff

Michael Sheahan had notice. The district court (Judge Samuel Der-Yeghiayan) granted the defendants' motion for summary judgment in full. Walker now appeals this judgment as well as several discovery rulings pertaining to his *Monell* claims.

According to Walker (all of the "facts" are viewed at this stage of the case as Walker presents them; we, of course, do not vouch for their reliability), CCJ officers attacked and used excessive force against him on January 11, January 14, September 8, and October 6, 2004.[1] On January 11, defendants Giunta and Garrett and other unknown officers used force against Walker, injuring his head, back, and arm. Afterwards, Walker was not taken for medical treatment but rather for a psychological evaluation and put in restraints for 12 hours. He did not receive medical care until 3 days later. Walker filed a grievance in connection with this incident, which was denied on February 20. Walker then appealed; he received the denial of his appeal on February 27.

On January 14, defendants Cruz, Duffy, Harmon, Norris, Savala, Steadman, and other unknown officers used force against Walker, causing visible injuries. Walker filed a grievance in connection with this incident, which was denied on September 10. Walker then appealed; he received the denial of his appeal on September 24.

On September 8, defendants Garner, Kampic, Meadows, Brown, Garrett, Black, Alexander, Taylor, Cobbs, Booker, and other unknown officers used force against Walker,

---

[1] Walker also alleged incidents of excessive force that took place in 2003. Those claims were dismissed by the district court in an earlier judgment that Walker does not appeal.

injuring his head, back, and face (including a split, bleeding eyebrow) and causing trauma to his torso area. Three former and current detainees witnessed this incident and later testified about what they saw. Afterwards, Walker was taken for medical treatment to Cermak Health Services. There, staff completed forms stating that Walker declined medical treatment, although Walker testified that he did not. CCJ officers then took him to a psychological unit. Seeing Walker's injuries, staff there told the officers to return him to Cermak. On his second visit, Walker received care for his injuries. Walker filed a grievance in connection with this incident and received a response stating that no investigation was warranted. Walker then appealed; he received the denial of his appeal on September 24.

On October 6, defendants Taylor, Black, Brown, Garner, Alexander, Patterson, Miller, Bertels, and other unknown officers used force against Walker, causing pain in his back, torso, and head and bleeding in his ears and nose. Afterwards, Walker was taken to Cermak on a backboard. There, CCJ officers were reluctant to let Walker receive medical care, only doing so after a nurse intervened. A doctor eventually showed Walker an X-ray indicating that he had a broken bone in his face. The doctor made follow-up appointments for Walker at a hospital, but CCJ staff did not allow him to keep them. Walker testified that he gave a social worker a completed grievance form concerning this incident. The social worker then went on vacation, and Walker was subsequently transferred to another jail. He never received a copy of his grievance and does not know what happened to it; currently, no such grievance is on file at CCJ.

Walker filed a *pro se* complaint on September 29, 2005, seeking to state a claim under 42 U.S.C. § 1983 for viola-

tions of his constitutional rights. After the district court appointed his present counsel, Walker filed an amended complaint on February 13, 2006, adding related federal and state law claims. The amended complaint sought money damages for Walker and injunctive relief for a putative class.[2] During discovery, the district court denied several of Walker's motions to conduct additional discovery concerning his *Monell* claims. The court later granted the defendants' motion for summary judgment in full. *Walker v. County of Cook*, No. 05 C 5634, 2007 WL 1875991 (N.D. Ill. June 28, 2007).

We review a grant of summary judgment *de novo*, construing the evidence in the light most favorable to the nonmoving party. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Summary judgment is proper if "there is no genuine issue as to any material fact and [ ] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A mere scintilla of evidence in support of a claim will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

We begin with Walker's *Monell* claims against Sheriff Sheahan, which the district court dismissed for lack of sufficient evidence. Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A governmental unit is not liable under § 1983 unless the deprivation of constitutional rights is

---

[2] At this point in time, Walker has not moved for class certification.

caused by its own policy or custom. *Kujawski v. Bd. of Comm'rs of Bartholomew County*, 183 F.3d 734, 737 (7th Cir. 1999); *see also Monell*, 436 U.S. at 694. A local governmental unit's unconstitutional policy or custom can be shown by: (1) an express policy causing the loss when enforced; (2) a widespread practice constituting a "custom or usage" causing the loss; or (3) a person with final policymaking authority causing the loss. *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). Walker proceeds under the second method, arguing that, whatever CCJ's formal policies were, it did not *in practice* enforce policies against excessive use of force. Walker specifically argues that there was widespread use of excessive force, inadequate investigation and training, and a "code of silence" at CCJ.

Walker's evidence is insufficient to preclude summary judgment on this issue. Aside from his own testimony, Walker primarily relies on a 2003 grand jury investigation that examined 783 complaints of excessive force over the 5-year period from 1998 to 2003 to support his claim.[3] That investigation, however, did not result in the issuance of any indictments. And, while the investigation revealed that, of the 355 files opened by the sheriff involving officers for on-the-job offenses, 18 of the 33 sustained were for excessive force, this fact does not demonstrate that claims were not adequately investigated. Walker also alleges inadequate training, but "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate

---

[3] We decline to address the defendants' argument that this evidence is inadmissible because the outcome of this issue is unnecessary to our decision.

indifference to the rights of persons with whom the police come into contact." *Canton v. Harris*, 489 U.S. 378, 388 (1989). Here, the training received by the correctional officers imposes limitations on the amount of force that the officers may use. The defendants have also consistently stated that the sheriff's office trains them to use only as much force as necessary in each situation. Finally, Walker's evidence is insufficient to establish a "code of silence." The evidence shows that CCJ officers have been disciplined for the use of force and are trained to intervene and file a report if they observe a coworker attack a detainee. Based on this evidence, a reasonable jury could not find for Walker on his *Monell* claims.

Related to this issue is the question of whether the district court properly denied Walker's requests for additional discovery to support his *Monell* claims. Specifically, Walker sought to interview and photograph other detainees who claimed to have been attacked by CCJ officers, depose another detainee and two officers, interview a defense witness on various topics, compel production of additional documents from the 2003 grand jury investigation, and extend discovery. We review such rulings for an abuse of discretion. *Reynolds v. Jamison*, 488 F.3d 756, 761 (7th Cir. 2007). A court does not abuse its discretion unless: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary. The complaining party must also establish that the district court's decision resulted in "actual and substantial prejudice." *Id.*

Ample evidence in the record supports the district court's rulings on these issues. For example, the record

shows that some deposition requests were denied because Walker could not state that those witnesses had information relevant to the specific incidents involved or to CCJ's policies and procedures. And, as for the grand jury documents, Walker glosses over the fact that he received the final 2003 grand jury report and exhibits, which alone consisted of over 6,000 pages. In addition, Walker deposed more than 25 of the named defendants, a program services representative, a Cermak representative, an expert, and multiple detainees at CCJ and other facilities. Because district courts are in the best position to decide the proper scope of discovery, *see, e.g.*, *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996), and there was enough discovery here to choke a horse, we find no evidence that the judge acted arbitrarily or that his rulings resulted in substantial prejudice to Walker's case.

We now turn to Walker's individual claims, which the district court disposed of for various reasons. The district court granted summary judgment on Walker's claims arising out of the January 11 and 14, 2004, incidents because they occurred more than 2 years before Walker filed his amended complaint on February 13, 2006. While a 2-year statute of limitations does indeed apply to Walker's § 1983 claims, *see Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998), the limitations period is tolled while a prisoner completes the administrative grievance process. *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). Here, Walker did not receive the denial of the appeal of his January 11 and January 14 grievances until February 27 and September 24, 2004, respectively. The defendants argue that we should not apply *Johnson*'s tolling rule here because Walker did not file his grievances within 15 days of the incidents, in violation of CCJ

procedure (General Order 14.5). However, CCJ's own witness, Roshonda Carroll, testified that general orders were not available to detainees, and Walker testified that he was not aware of the 15-day deadline. The rule in *Johnson* applies, and summary judgment on these incidents should not have been ordered.[4]

The district court found that Walker's evidence regarding the September 8 incident was conclusory and insufficient to demonstrate a genuine issue of material fact. We disagree. In addition to his own testimony, Walker cited the testimony of three eyewitnesses who saw CCJ officers hit him in the face, beat him with handcuffs, and stomp on him while he was on the floor. He also submitted medical records indicating that he suffered trauma, bruises, and cuts on his face as a result. The defendants defend the district court's ruling by contending that their medical expert, Dr. Flaherty, established that Walker's version of the events was "completely medically impossible" based on the injuries he actually sustained. While Dr. Flaherty did opine that Walker's injuries were consistent with the defendants' account of the incident, he concluded that he could not say whether the force used by CCJ officers was excessive under the circumstances. Based on the evidence, a reasonable jury could disagree with the defendants' expert and accept Walker's version of the events. Thus, summary judgment is improper regarding the September 8 incident.

---

[4] Defendant Garrett also argues, for the first time on appeal, that there is inadequate evidence to support a finding that he himself used excessive force during the January 11 attack. Even if this argument were proper, Walker's testimony linked Garrett to the attack and supplied sufficient evidence to create a question of fact on this issue.

The district court granted summary judgment on Walker's claims arising from the October 6 incident because Walker had not satisfied the exhaustion requirements of the Prison Litigation Reform Act of 1995 (PLRA). *See* 42 U.S.C. § 1997e(a). We disagree. Contrary to the district court's finding, Walker did not "admit" that he failed to file a grievance or an appeal in connection with this incident. While the October 6 grievance was omitted in an initial interrogatory, Walker's deposition testimony and responses to the defendants' statements of fact explained that

> with respect to the October 6, 2004, incident, [Walker] filed a grievance with a social worker but the social worker went on vacation, [Walker] was transferred to Kendall County for several months, and [he] never received a copy of the grievance or knew what happened to it.

Thus, Walker notified the defendants during discovery that he attempted to grieve the October 6 incident, making the "sham affidavit" rule inapplicable. *See Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) ("[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions."). Moreover, although CCJ's records custodian, Roshonda Carroll, testified that no grievance is currently on file, this is consistent with Walker's testimony that social workers do not always submit grievances. And, if Walker did submit a grievance but received no ruling, he was not required to file an appeal. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Thus, Walker's testimony demonstrates the existence of a genuine issue of material fact as to whether he grieved the October 6 incident.

The district court granted summary judgment on Walker's state law claims pursuant to the one-year statute of limitations in the Illinois Local Governmental and Governmental Employees Tort Immunity Act (ILGGETIA), 745 Ill. Comp. Stat. 10/1-101 *et seq.* We disagree. The record shows that the defendants failed to plead this defense and therefore waived it. *See Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir. 1990). The defendants attempt to get around this default by arguing that defendant Garrett raised the ILGGETIA statute of limitations defense in his answer, which the district court allowed all defendants to adopt. The problem with this argument is that Garrett's answer only raised *immunity* defenses appearing in sections 2-109, 2-201, 2-202, 2-204, and 2-208 of ILGGETIA; it never mentioned the *limitations* provision, which appears in section 8-101. The defendants first put Walker on notice of their intent to rely on a statute of limitations at summary judgment. While the district court has discretion to allow affirmative defenses to be amended in certain situations, *see Venters v. City of Delphi*, 123 F.3d 956, 967-68 (7th Cir. 1997), we can discern no justification for the delay in this case. Thus, summary judgment on this basis is improper.

The district court disposed of Walker's claims of inadequate access to medical case based on "admissions" and insufficient evidence. Once again, we disagree. Walker consistently disputed that he received adequate medical care in connection with the January 11, September 8, and October 6 incidents, and his medical records are not inconsistent with his testimony. The records confirm, for instance, that Walker received no medical treatment for 3 days after his injuries on January 11; he was taken for a psychological exam and put in restraints instead. They

also indicate that it took two trips to the emergency room before Walker received treatment for his September 8 injuries. Finally, the records support Walker's contention that he was denied timely and adequate follow-up treatment for the fractured cheekbone he suffered as a result of the October 6 incident. As the defendants concede, when an officer causes injuries by using excessive force, as Walker alleges here, the law imposes a higher standard—"a duty of *prompt* attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) (emphasis added). Walker's evidence creates a question of fact on this issue. As with several of the other issues we discussed, the defendants offer some decent arguments in rebuttal, but these arguments are appropriately made to a jury.

Finally, the district court granted summary judgment on Walker's retaliation claims based on insufficient evidence. However, the defendants never raised this argument; they moved for summary judgment on the retaliation claims solely on the basis that they were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Granting summary judgment *sua sponte* is improper "unless the party against whom summary judgment was entered had (1) proper notice that the district court was considering entering summary judgment and (2) a fair opportunity to present evidence in opposition to the court's entry of summary judgment." *Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir. 1999). Here, Walker had no notice that the adequacy of his retaliation evidence was being challenged and accordingly did not address it in his brief or statements of fact. Walker now points to evidence he would have supplied if given notice and to evidence already in the record sufficient to raise an issue as to

whether several attacks were in retaliation for his griev-
ances. Thus, summary judgment on these claims cannot
be upheld.

In sum, we agree that Walker's evidence was insuf-
ficient to overcome summary judgment on his official
capacity claims. We also conclude that the district court
did not abuse its discretion in denying Walker addi-
tional discovery to support these claims. However, we
disagree that the defendants should have been granted
summary judgment on Walker's individual claims. Accord-
ingly, the case will be remanded for further proceedings.

Walker's final request is that we use Circuit Rule 36 to
direct his case to a new judge on remand. Rule 36 applies
primarily on retrial after reversal, "but we apply it in
our discretion to avoid the operation of bias or mindset
which seems likely to have developed from considera-
tion and decision of motions to dismiss or motions for
summary judgment and the like." *Cange v. Stotler and Co.*,
913 F.2d 1204, 1208 (7th Cir. 1990). Walker argues that
applying Rule 36 is appropriate here because the dis-
trict judge implicitly made credibility determinations. Of
course, credibility determinations are inappropriate on
summary judgment. *Washington v. Haupert*, 481 F.3d 543,
550 (7th Cir. 2007). However, the district judge's deci-
sion indicates that he concluded only that there was
insufficient evidence on which a jury could reasonably
find for Walker. Because our opinion today settles that
issue, we do see a problem with an ordinary remand. We
therefore deny Walker's request to apply Rule 36.

For the foregoing reasons, the judgment of the dis-
trict court is AFFIRMED IN PART, REVERSED IN PART, and
REMANDED for further proceedings consistent with this

opinion. And those further proceedings should not include any more discovery: enough is enough.